NICOLETTI HORNIG & SWEENEY
*Attorneys for Plaintiff*
*PEDOWITZ MACHINERY MOVERS OF*
*N.J. INC.*
505 Main Street, Suite 106
Hackensack, New Jersey 07601
(201) 343-0970
vwamser@nicolettihornig.com
(File No. 42000129 JAVN/NN/VW)

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY (TRENTON)

----------------------------------------------------------X

PEDOWITZ MACHINERY MOVERS OF
N.J. INC.,                                                  Case No.:

               Plaintiff,

       -against-

FIGEAC AERO,

               Defendant.

----------------------------------------------------------X

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, PEDOWITZ MACHINERY MOVERS OF N.J. INC. ("Plaintiff" or "Pedowitz"), by its attorneys, Nicoletti Hornig & Sweeney, as and for a complaint against Defendant FIGEAC AERO ("Defendant" or "Figeac"), alleges upon information and belief as follows:

## JURISDICTION AND VENUE

1.    This action is filed under and pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201.

2.    An actual controversy of a justiciable nature exists between Plaintiff and Defendant involving the rights and obligations under a contract for services and depending on

the construction of said contract, the aforesaid controversy can be determined by a judgment of this Court, without further suit.

3.      This Court has subject matter jurisdiction over Plaintiff's claims in this action pursuant to 28 U.S.C. § 1332 based on the diversity of citizenship of the parties.

4.      The amount in controversy exceeds $75,000.00.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 in that a substantial part of events giving rise to the dispute occurred in this Judicial District and the Defendant is subject to personal jurisdiction within this Judicial District.

## PARTIES

6.      At all times relevant, Pedowitz was and is a company duly organized under and existing by virtue of the laws of the State of New Jersey with a principal place of business at 1 Kullman Corporate Campus Drive, Lebanon, New Jersey 08833.

7.      At all times relevant, Figeac was a corporation or other business entity duly organized under and existed by virtue of, or otherwise licensed or authorized to do business under the laws of France with an office and place of business at Zone Industrielle de l'Aiguille, 46100 Figeac, France.

8.      At all times relevant, Figeac was a foreign corporation which in fact transacted business in the State of New Jersey.

9.      Upon information and belief, at all times relevant, Figeac did and/or does transact business in the State of New Jersey.

10.     At all times relevant, Figeac purposefully availed itself of the privilege of conducting activities within the State of New Jersey by contracting with Pedowitz in New Jersey with regard to the transport of certain shipments of used machinery.

11.     Plaintiff's claims against Figeac arise out of Figeac's activities in the State of New Jersey, specifically Figeac's contracting with Pedowitz, a New Jersey company, to perform certain transportation and storage services for Figeac within the State of New Jersey.

## NATURE OF THE ACTION

12.     By this declaratory judgment action, Plaintiff Pedowitz seeks judgment against Defendant declaring that Pedowitz is not liable either in tort or contract with respect to any damage to certain used machinery transported and stored between April 2019 and January 2020 as detailed below. Additionally, although Pedowitz denies any and all liability for the alleged damages, Pedowitz seeks a declaration that any potential damages recoverable by Figeac with respect to the damage to the used machinery cannot exceed $1 million USD, which was the recent purchase price of the used machinery.

## FACTUAL BACKGROUND

13.     At all times relevant, Plaintiff Pedowitz was and is in the business of, among other things, transporting machinery.

14.     At all times relevant, Defendant Figeac was and is in the business of aerospace engineering.

15.     On or about January 29, 2019, Figeac entered into a contract with non-party Caterpillar Inc. to purchase certain used manufacturing machinery, consisting of six MAZAK INTEGREX E-1060 lathes (the "Machinery"), for the total amount of $1,000,000.00.

16.     Between February-March 2019, Pedowitz entered into negotiations with Figeac with regard to Pedowitz cleaning, dismantling, packing, loading and transporting the Machinery from the Caterpillar facility in Illinois to Figeac in Figeac, France.

17.     Based on the fact that there was no space available at the Caterpillar factory tin Illinois to perform the packaging, it was agreed by Figeac and Pedowitz to arrange for the shipment of the Machinery by truck to the Pedowitz warehouse located in Lebanon, New Jersey (the "Lebanon facility") for the cleaning and packaging at the Lebanon facility.

18.     Sometime in April-May 2019, Pedowitz dismantled and transported the Machinery from Illinois to the Lebanon facility.

19.     Figeac had advised Pedowitz that the Machinery would be shipped from New Jersey to France within two months.

20.     Pedowitz subcontracted MSS to prepare the Machinery for both inland transit to the Newark, New Jersey port and then ocean transit to France.

21.     In April 2019, Figeac provided specific instructions to Pedowitz concerning washing the Machinery which were contrary to the recommendations of the INTEGREX maintenance manual.

22.     On or about May 14-15, 2019, Figeac representatives visited the Lebanon facility to inspect the uncrated Machinery.

23.     Figeac arranged and attended the May 14-15, 2019 inspection, jointly attended by Pedowitz and MSS, in order to review the preparation and packaging of the first machine and establish a protocol for Figeac's requirements in terms of cleaning, greasing, and final clamping of moving parts. Figeac expressly approved of the cleaning and packaging protocol developed at the inspection.

24.     On or about May 22, 2019, Figeac representatives again visited the Lebanon facility again in order to inspect the Machinery.

25.     On or about June 11, 2019, Pedowitz forwarded a logistics proposal to Figeac listing the services to be performed by Pedowitz with respect to the Machinery, which included the packaging of the Machinery, the inland transportation of the Machinery from Illinois to New Jersey and the storage of the Machinery in New Jersey.

26.     On or about June 13, 2019, Pedowitz advised Figeac that they will be ready to start loading the containers by June 17, 2019.

27.     On or about June 24, 2019, Pedowitz advised Figeac that they need to move all the auxiliary equipment and get it packed into ocean containers to ship the crated machines to the port.

28.     On or about June 26, 2019, Figeac instructed Pedowitz to store the Machinery in the parking lot of the Lebanon facility in an apparent effort to lower storage costs and advised that the Machinery will not be shipped for several more weeks.

29.     The Machinery remained inside the Lebanon facility as Figeac and Pedowitz continued to negotiate storage costs and transportation proposals.  Figeac refused to provide Pedowitz with instructions on shipping the Machinery and, as a result, the Machinery remained at the Lebanon facility for over three months

30.     The Machinery was eventually delivered to the port in Newark, New Jersey on or about September 30, 2019 and October 2, 2019.

31.     The containers were loaded onto a K Line vessel ORION HIGHWAY at the Newark, New Jersey port on or about October 4, 2019.

32.     The shipments arrived at the port in France in mid-December 2019 with final delivery to Figeac in mid to late December 2019 and January 2020.

33.     The delivery of the Machinery to its final destination in France took place between November 21, 2019 and January 10, 2020.  It was reported upon unpacking the crates containing the Machinery that there was water leaking from the inside of the packaging and from the machines.

34.     On or about December 7, 2020, Figeac commenced a judicial proceeding in France in connection with alleged damage to the Machinery.  Pedowitz has appeared in the French proceeding under a jurisdictional objection solely in order to monitor the proceeding.

### AS AND FOR A FIRST CAUSE OF ACTION

35.     Repeats and realleges each and every allegation set forth in paragraphs "1" through "34" inclusive of this Complaint with the same force and effect as if more fully set forth herein.

36.     The alleged damage to the Machinery was caused solely by the negligence of Defendant with no negligence on the part of Plaintiff contributing thereto.

37.     As the shipper, Defendant had a duty to property inform Plaintiff of the nature of the cargo and instruct Plaintiff concerning the cargo's condition and the necessary level of cleaning and packaging required for the type of cargo.

38.     The alleged damage to the Machinery was caused by the negligence, gross negligence, carelessness, recklessness, and/or negligent acts and/or omissions of Defendant in that the Defendant, by and through its agents, servants, and employees, negligently failed to provide proper instructions to Plaintiff with respect to the Machinery, failed to arrange for shipment of the Machinery in a timely manner as advised, personally inspected and expressly approved of the method and protocol for the cleaning and packaging of the Machinery prior to

shipment, improperly instructed Plaintiff to wash the Machinery before shipment contrary to the manufacturer's recommendations, and was otherwise negligent.

39.     Plaintiff's alleged liability to Defendant, if any, was caused solely by Figeac's negligence, which consisted of, amount other things, its failure to provide proper instructions regarding the cleaning and packaging of the Machinery, failure to arrange for shipment of the Machinery in a timely manner as advised, personally inspecting and expressly approving of the method and protocol for the cleaning and packaging of the Machinery prior to shipment, and improperly instructing Plaintiff to wash the Machinery before shipment contrary to the manufacturer's recommendations.

40.     By virtue of the foregoing, Plaintiff is entitled to a judgment declaring that it was not negligent and bears no liability for the alleged damage to the Machinery.

## AS AND FOR A SECOND CAUSE OF ACTION

41.     Repeats and realleges each and every allegation set forth in paragraphs "1" through "40" inclusive of this Complaint with the same force and effect as if more fully set forth herein.

42.     Plaintiff performed all of the obligations it owed to Defendant.

43.     Plaintiff is not liable for any alleged breach of contract with Defendant.

44.     Defendant breached the agreement with Plaintiff concerning the storage and transportation of the Machinery by, among other things, delaying the shipment of the Machinery from the Lebanon facility, failing to provide proper instructions regarding the storage, cleaning and packaging of the Machinery, expressly approving of the cleaning and packaging protocol to be used by Plaintiff, and improperly instructing Plaintiff to wash the Machinery before shipment contrary to the manufacturer's recommendations.

45. By virtue of the foregoing, Plaintiff is entitled to a judgment declaring that it did not breach any contract with Figeac and is not liable for any alleged damage to the Machinery.

**AS AND FOR A THIRD CAUSE OF ACTION**

46. Repeats and realleges each and every allegation set forth in paragraphs "1" through "45" inclusive of this Complaint with the same force and effect as if more fully set forth herein.

47. Pursuant to the applicable law, the maximum amount of damages recoverable for damage to personal property, such as the Machinery, is the difference between its market value before and its market value after the alleged damage occurred.  If the Machinery can be repaired at a cost less than the difference between its market value before and its market value after the damage occurred, the recoverable damages are limited to the cost of the repairs.

48. If the estimated cost to repair the Machinery exceeds the difference between its market value before and its market value after the damage occurred, the maximum amount of damages recoverable by Figeac is the difference between the Machinery's market value before and its market value after the damage occurred.

49. Defendant is not entitled to recover the cost to repair the Machinery if the cost of such repairs exceeds either the loss in its market value due to the damage or its market value immediately before the damage.

50. The market value of the Machinery before the damage occurred did not exceed its purchase price of $1,000,000.00.

51. By virtue of the foregoing, Plaintiff is entitled to a judgment declaring that any damages recoverable by Defendant as a result of the alleged damage to the Machinery is limited

to a maximum of $1 million, which represents the maximum market value of the Machinery prior to the alleged damage.

WHEREFORE, Plaintiff Pedowitz Machinery Movers prays for judgment against Defendant Figeac Aero as follows:

A.     in favor of Plaintiff and against Defendant on the First Cause of Action for judgment declaring that Plaintiff was not negligent and bears no liability for the alleged damage to the Machinery;

B.     in favor of Plaintiff and against Defendant on the Second Cause of Action for judgment declaring that Plaintiff did not breach any contract with Figeac and is not liable for any alleged damage to the Machinery;

C.     in favor of Plaintiff and against Defendant on the Third Cause of Action for judgment declaring that any damages recoverable by Defendant as a result of the alleged damage to the Machinery is limited to a maximum of $1 million;

D.     in favor of Plaintiff for such other and further relief that this Court may deem just and proper, together with costs and disbursements of this action.

Dated:      Hackensack, New Jersey
            September 6, 2022

                              NICOLETTI HORNIG & SWEENEY
                              *Attorneys for Plaintiff*
                              *PEDOWITZ MACHINERY MOVERS*

                    By:     */s/ Val Wamser*
                            Val Wamser
                            505 Main Street, Suite 106
                            Hackensack, New Jersey 07601
                            (201) 343-0970
                            vwamser@nicolettihornig.com
                            (File No. 42000129 JAVN/NN/VW)

T:\vw\42-129.DJ COMPLAINT.Pedowitz v Figeac Aero.doc